Slidell, J.,
dissenting. In consequence of the abolition of the parish judge and probate court system, it was obvions to the framers of the Constitution, that there would be a serious accumulation of the business of district judges. To prevent this accumulation from becoming too onerous, and to facilitate the administration of justice, it was provided by article 79, that “ the Legislature shall have power to vest in clerks of courts authority to grant such orders, and do such acts as may be deemed necessary for the furtherance of the administration of justice, and in all cases the powers thus granted shall be specified and determined.” Under this constitutional grant of power, the Legislature enacted the Statute of 1846, which is entitled, “ An act-to carry into effect the judiciaiy system.” In the various sections of this statute, in which power is conferred to grant specified orders and do enumerated acts, clerks only are mentioned. The only section which speaks of deputy clerks is the 18th, where it is said that each of said clerks shall have power to appoint as many deputies as he may judge necessary to be approved by the district judge, and sworn in by him in open court or in chambers ; that the clerk shall be responsible for the official conduct of said deputies, and said deputies shall have all the powers now vested by law in deputy clerks.
There is an ancient, and I think a very sound rule of interpretation: Si de interpretations legis quéeratur, in primis inspiciendum est quo jure civitas retro in ejus modi casibus usa fuisset.” It is familiar to eveiy one that, under the former organisation of the judiciary system, during a very long course of years deputy clerks had been in the practice of discharging all the duties performed by their principals. In Kirkman v. Weyer, nearly thirty years ago, the question was, whether the clerk of the district court is authorised by law to appoint a deputy with power to administer oaths, and issue executory writs ; and it was urged, that the exercise of public offices by deputy, was opposed to good policy, contrary to justice, and repugnant to the spirit of our Government. That, if permitted in any case, it must be by express law; and that, previously to the act of 1817, no one could pretend that power was granted by law to clerks to administer oaths by deputy. Martin, J., observes: “ Clerks of courts have had deputies' ever since the establishment of the American Government in this countiy; and the act of 1817 appears to have recognised such deputies. The clerk and the sheriff are the only officers which the Legislature may have had in view under that act. The attorney general is not an officer particularly attached to any court. It seems to me to be too late now to call in question acts done by a deputy clerk. A deputy clerk may do all acts which his principal can.” And Matthews, J., said: “I believe it may be laid down as an. undeniable fact, that the clerks of the- different courts of the late Territorial Government were in the constant habit of acting by deputy wherever their convenience required it. The same practice has prevailed under the State Government; without its legality or propriety having been ever before called in question. It has, then, *247 been a custom coeval with the American government of the country; and even were we to allow that it originated in error, the maxim would then (if in any case) apply that communis error facit jus. I am of opinion with Judge Martin, that this custom has been sanctioned by the Legislature, in the act relative to deputies of the officers of our courts.”
The ancient usage of the State was impliedly sanctioned in 1825 by the 782d article of the Code of Practice, which declares, “ Clerks may appoint deputies, for whom they shall be responsible, and who shall take an oath before the court to fulfil well and faithfully all the duties entrusted to the clerk whom they represent.”
The system of entrusting a portion of the judicial power to clerks of court was not an entire novelty. In 1828, it was enacted by a Legislature, acting under a Constitution which contained no express provision like the 78th article of our present Constitution, that the orders of arrest, attachment, sequestration, provisional seizure and injunction, as well as the commissions to take the deposition of witnesses in civil matters, may be issued, either by the judge before whom the cause is brought, or by the clerk of his court: provided that the parlies applying for the same, comply with the formalities prescribed by law to obtain any one of the above-mentioned orders. It will not be denied that these functions involve the exercise of judicial power. And it is to be observed, that the grant of power is to clerks ; deputies are not mentioned.
Now, under this legislation it was the constant and uniform practice, during along series of years, in our Courts at New Orleans, (of the practice in the country courts I have not the same knowledge,) for deputy clerks to grant orders of attachment, arrest, and sequestration : orders specified in the 1st section of the act of 1846. No one, I believe, questioned the practice. It was assented to by the courts and the profession. Is it not reasonable to suppose, that the framers of the Constitution and the legislators of 1846 had in contemplation the ancient practice, legislation, and jurisprudence 1
To deny deputies the same extent of power, with reference to their principals, which they exercised without question, under the former judiciary system, seems pro tanto to defeat the purpose of the Constitution and of the act of 1846 ; which, as I have already suggested, was to prevent too great an accumulation of labor upon the district judges, and to promote the speedy and convenient progress of justice. If the interpretation which I maintain be not the correct one, those facilities, in several cases, are less now than they were before; and deputy clerks, who, under the old system, could order arrests, attachments, sequestrations, provisional seizures, and commissions, are now without authority to do so.
I do not say that the 18th section of the act of 1846 is entirely free from ambiguity; but I consider it susceptible of being construed as meaning, that the powers and functions of deputy clerks should be the same as they had formerly been; that is to say, that they should be capable of fulfilling all the duties of which the clerk is capable. C. P. 782.
In considering that a clause in a State Constitution, and the action of the Legislature under it, should receive a liberal interpretation, I wish not to be misunderstood. There are cases in which fundamental principles of truth and right may be involved: principles which do not owe their existence or their sanction to the Constitution. If a case should arise in which an interpretation of the Constitution or a statute should be invoked, which would bring them *248 in conflict with such a principle, it would certainly be the duty of a judge to construe the former with a jealous strictness.
In conclusion, I may add, that as far as I have been able to ascertain, deputy clerks have, under the new judiciary system, been in the habit of exercising all the functions and powers of clerks, as they did under the old system. This contemporaneous exposition is entitled to much weight. The question before us is important for the past as well as the future.